UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICK JAMES WOODSIDE,

    Plaintiff                                        Civil Action No. 17-13395

v.                                                                      HON. ROBERT H. CLELAND
                                                           U.S. District Judge
                                                            HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL                        U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Erick James Woodside ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Docket #14] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings, and that Defendant's Motion for Summary Judgment [Docket #16] be DENIED.

## PROCEDURAL HISTORY

On April 30, 2014, Plaintiff filed applications for DIB and SSI, alleging an onset date of March 4, 2013 (Tr. 184, 191). After the initial denial of the claim, Plaintiff requested an

administrative hearing, held on January 27, 2016 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Kari Deming (Tr. 61). Plaintiff, represented by attorney Diane Kwitoski, testified (Tr. 69-99), as did Vocational Expert ("VE") James Fuller (Tr. 100-108). On March 8, 2016, ALJ Deming found that Plaintiff was not disabled (Tr. 43-55). On August 23, 2017, the Appeals Council denied review (Tr. 1-3). On October 17, 2017, Plaintiff filed for judicial review of the Commissioner's final decision in this Court.

## BACKGROUND FACTS

Plaintiff, born May 26, 1967, was 48 when the ALJ issued her decision (Tr. 55, 184). He received a GED in 1985 and worked previously as a truck driver (Tr. 229). He alleges disability due to coronary heart disease, bipolar disorder, and a closed head injury (Tr. 228).

**A. Plaintiff's Testimony**

*Plaintiff's counsel amended the alleged onset of disability date to November 18, 2013* (Tr. 94).

Plaintiff offered the following testimony:

He lived in a condominium Fraser, Michigan with his mother and father (Tr. 69, 71). He was right-handed, stood 5' 9" and weighed approximately 200 pounds (Tr. 70). He held a valid, unrestricted driver's license and did not have a handicap parking permit (Tr. 70). He had completed training required to transport hazardous material (Tr. 71). He had not worked since March, 2013 when he was terminated after experiencing emotional problems at work (Tr. 72, 74). He was eligible for Medicaid (Tr. 72).

Plaintiff experienced short-term memory problems since undergoing a cardiac procedure in November, 2013 (Tr. 73). Further, as a result of cognitive problems resulting from head injuries in a car accident at the age of 15 he had lost multiple jobs (Tr. 73). He enjoyed his career as a truck driver but felt "intimidated, nervous, sometimes angry, and []

inadequate" in the company of others (Tr. 75). He experienced an emotional breakdown in 2010 due to relationship problems that culminated in a suicide attempt (Tr. 75). Plaintiff attended Narcotics Anonymous ("NA") five times a week and had not had a relapse since August of the previous year (Tr. 76). Plaintiff attributed his former narcotics use to an attempt to "self-medicate" (Tr. 77).

In addition to cognitive and substance abuse problems, Plaintiff experienced neck, hip, shoulder, back, knee, and ankle pain (Tr. 79). He attributed the body pain to the lifting requirements of his former work (Tr. 78). He experienced problems standing for extended periods and the hip and leg pain caused sleep disturbances (Tr. 79). He was waiting to be approved for sleep apnea studies (Tr. 80). He had been terminated by a mental health provider after "blowing up" at staff members (Tr. 81). His concentrational problems were exacerbated by anxiety and "low" moods (Tr. 84-85). He believed that his cognitive and emotional problems prevented him from performing even unskilled full-time work (Tr. 86).

Since undergoing a November, 2013 heart procedure, Plaintiff experienced intermittent shortness of breath requiring him to take frequent breaks from self care and household tasks (Tr. 83). He reclined every day for anywhere between 30 and 120 minutes (Tr. 83). He had been advised to avoid reaching overhead and push/pulling due to cardiac problems (Tr. 84). His cardiologist limited him to lifting 10 pounds (Tr. 84). Due to body pain, foot tingling, and need to change positions periodically, he was physically unable to perform even sedentary work (Tr. 87, 89). He required the use of an ankle brace due to injuries sustained in the car accident (Tr. 89). He avoided driving long distances due to both hand pain and his tendency to forget where he was going (Tr. 88).

Although he stopped working in March, 2013, he did not apply for disability benefits until almost a year later due to cognitive limitation resulting from the side effects of

psychotropic medication (Tr. 90). He currently took Xanax and Prosac for anxiety, Lipitor for his heart condition, and an Albuterol inhaler (Tr. 95). Plaintiff had cut down on his tobacco use and smoked around two cigarettes a day at the time of the hearing (Tr. 99).

    **B.**    **Medical Evidence**[1]

### 1. Treating Sources

In March, 2013, Plaintiff sought emergency treatment for chest pain, dizziness, and fatigue (Tr. 297, 306). He was prescribed Prednisone and Albuterol for asthma symptoms (Tr. 297). Treating records by internist Kenneth E. Smith, M.D. from the following day note Plaintiff's report of fatigue and shortness of breath (Tr. 645, 674).

September, 2013 mental health records by Eastwood Clinic note a "history of impulsive behaviors and/or poor judgment" (Tr. 598). Plaintiff had recently been charged with crack cocaine possession (Tr. 599). He reported chronic fatigue and back problems (Tr. 599). October, 2013 mental health records by Eastwood Clinic note Plaintiff's report of chronic pain since sustaining injuries in a car accident as a teenager (Tr. 594).

In November, 2013, Plaintiff was admitted to the hospital for chest pains (Tr. 315). He admitted to attempting suicide by taking a large amount of cocaine (Tr. 315, 349). He was referred for a psychiatric evaluation (Tr. 315). He reported that he had not taken prescribed bipolar medication for the past three months (Tr. 353). He underwent a cardiac catheterization followed by bypass surgery several days later (Tr. 315, 318). He was discharged for inpatient psychiatric treatment with instructions to follow up with cardiac surgeon Gunateet Goswami, M.D. (Tr. 318). He was prescribed medication for

---

[1] Treating records predating the amended alleged onset of disability date of November 18, 2013 by more than one year have been reviewed in full but are not included in the present discussion.

hypertension, hyperlipidemia and an anticoagulant (Tr. 318-319). He was also prescribed Klonopin for psychiatric disorders, Norco for pain, and Albuterol for asthma (Tr. 329). He was advised to not lift more than 10 pounds (Tr. 323, 327). Records from the following month note that Dr. Smith was Plaintiff's primary care physician (Tr. 569).

December, 2013 mental health records by Eastwood Clinics note a normal musculoskeletal appearance (Tr. 586). Plaintiff was cooperative with normal speech, mood, affect, language, and thought processes (Tr. 586-587). He denied suicidal ideation or hallucinations (Tr. 587). Later the same month, Plaintiff sought emergency treatment for renewed chest pains after lifting groceries (Tr. 624, 626). He was discharged in stable condition after laboratory and imaging studies showed negative results (Tr. 624). Dr. Smith's records from the same month note chronic anxiety and depression (Tr. 644).

Dr. Smith's January, 2014 records note a recent vein clot and continued left lower extremity pain but a normal gait and station (Tr. 643, 665). The same month, Dr. Goswami noted Plaintiff's report of shortness of breath upon mild to moderate exertion (Tr. 646, 680). Dr. Goswami's treatment notes state that Plaintiff had been "advised against carrying more than 20 pounds of weight and to stand and/or walk less than two hours in an eight-hour work day" (Tr. 680).

The same month, Dr. Goswami completed a medical examination report, stating that due to coronary heart disease, chest pain, fatigue, and shortness of breath, Plaintiff was limited to lifting less than 10 pounds on an occasional basis; standing/walking less than two hours in an eight-hour workday; and sitting for less than six (Tr. 649). Plaintiff was precluded from reaching, pushing/pulling, and fine manipulations (Tr. 649). Dr. Goswami noted that Plaintiff experienced limitations in comprehension, memory, concentration, and reading/writing (Tr. 649).

The same month, Dr. Smith also completed a medical examination report, making identical findings except that he declined to include limitations in sitting, comprehension, or reading/writing (Tr. 659). He noted that Plaintiff was being treated for depression (Tr. 659).

Dr. Goswami's April, 2014 records note complaints of shortness of breath upon moderate exertion and continued memory problems (Tr. 700). June, 2014 treating records by a colleague of Dr. Smith, Sima Salman, D.O., note Plaintiff's report of continued body pain (Tr. 667). Plaintiff exhibited full strength in the bilateral lower extremities (Tr. 667). He was prescribed physical therapy and referred to a pain management specialist (Tr. 667).

An August, 2014 MRI of the lumbar spine showed "mild to very mild" nerve root impingement at L2-L3 and L3-L4 but disc herniations with nerve root impingement at L4-L5 and L5-S1 (Tr. 660-661). The following week, Dr. Goswami restated the limitations found in his January, 2014 report (Tr. 657, 659). In September, 2014, Plaintiff reported some improvement in low back pain from physical therapy (Tr. 668). In October, 2014, Dr. Salman found that Plaintiff was unable to return to work due to continued back pain (Tr. 662).

In January, 2015, Dr. Salman noted complaints of continued lower back pain and memory loss since the November, 2013 heart procedure (Tr. 669, 731). In April, 2015, Dr. Goswami noted complaints of continued shortness of breath on mild to moderate exertion, continued lower back pain, and "significant issues" with memory loss (Tr. 729). In May, 2015, Plaintiff reported the onset of headaches and continued chronic pain (Tr. 665). An MRI of the brain from the same month was unremarkable (Tr. 708, 735). In June, 2015, Plaintiff discontinued mental health treatment at Eastwood Clinics against medical advice (Tr. 739). Treating records note poor short-term memory but good long-term memory (Tr.

740). September, 2015 records note that Plaintiff "relapsed" the previous month (Tr. 745). In October, 2015, Dr. Goswami noted complaints of continued shortness of breath on mild to moderate exertion (Tr. 727).

In January, 2016, Dr. Goswami found that Plaintiff was "not employable in any [full time] capacity due to his continuing severe cardiac impairment complicated by his emotional state" (Tr. 759).

### 2. Non-Treating Sources

On June 24, 2014, Michael Parish, M.D. performed a non-examining review of the evidence created as of that date on behalf of the SSA, citing field report observations that Plaintiff did not experience difficulty sitting, standing, or walking and Plaintiff's report that he was capable of walking two miles (Tr. 119-120). He concluded that Plaintiff could lift 10 pounds frequently and 20 occasionally; sit, stand, or walk for six hours in an eight-hour workday (Tr. 123). He found that Plaintiff was limited to occasional postural activity (Tr. 123).

In July, 2014, Nick Boneff, Ph.D. performed a consultative psychological evaluation on behalf of the SSA (Tr. 650-655), noting Plaintiff's report that he experienced concentrational problems since hitting his head in a car accident at the age of 15 (Tr. 650). Plaintiff admitted that he became dependent on crack cocaine after his fiancee´ left him in 2010 (Tr. 650). He reported that he had been "clean" for six months but experienced chronic fatigue, forgetfulness, and poor concentration (Tr. 650). Dr. Boneff noted that Plaintiff was cooperative, and fully oriented (Tr. 651). Dr. Boneff concluded that Plaintiff was "relatively stable" as to the conditions of depression and anxiety (Tr. 652).

In August, 2014, Zara Yousuf, M.D. performed a non-examining review of the records related to the psychological conditions, finding that due to depression and substance

abuse, Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in maintaining concentration, persistence, or pace (Tr. 120-121).

In December, 2015, Elaine Tripi, Ph.D. administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") and Wide Range Achievement Test-4 ("WRAT-4")(Tr. 749-753), noting that Plaintiff made a good effort throughout the examination (Tr. 749). She found that he had a full scale IQ of 73 (Tr. 750). She noted "fair remedial skills in reading" and "weakness in [] spelling and math" (Tr. 750). Dr. Tripi concluded that due to anxiety, bipolar disorder, and depression, Plaintiff was "not a viable rehabilitation candidate" or "capable of sustaining substantial, gainful work activity" (Tr. 751).

Dr. Tripi also assessed Plaintiff's work-related mental limitations finding moderate limitations in the ability to understand, remember, and carry out simple instructions (Tr. 755). She found extreme limitations in the ability to concentrate for extended periods or work within a schedule (Tr. 755). She found marked limitation in the ability to work without special supervision and extreme limitation in the ability to complete a normal work period without psychologically based interruption (Tr. 756). She found moderate limitation in social interaction except for marked limitation in the ability to respond appropriately to criticism (Tr. 756). She found marked limitation in the ability to travel to unfamiliar places, use public transportation, set realistic goals (Tr. 757). She found extreme limitation in the ability to handle stress (Tr. 757).

### C. Vocational Expert Testimony

VE James Fuller classified Plaintiff's previous work as a semi-tractor trailer operator as semiskilled at the medium exertional level and light driver, semiskilled/light[2] (Tr. 100).

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

The ALJ then posed the following hypothetical question, taking into account Plaintiff's age, educational level, and work experience:

> [P]lease assume a person . . . able to perform and sustain work at a medium exertional level . . . limited to work permitting the individual to sit, stand, and walk up to the exertional limits with the opportunity to shift between positions every hour for at least five minutes, who can do more than frequently reach, push, pull, and engage in fine manipulation, who should engage in no climbing of ropes, ladders, or scaffolding, or be exposed . . . to unprotected heights. . . . Only rarely, defined as less than on-third of the day, be exposed to extreme cold or extreme humidity. Engage in work consisting of simple, routine tasks defined as those generally mastered within 30 days. Engage in goal-oriented rather than production-pace work and engage in routine and predictable work . . . defined as that with no changes in the general nature of the task to be performed or to the work setting. Given that profile, could our hypothetical person do the past work? (Tr. 101-102).

The VE testified that the above-described hypothetical individual could not perform Plaintiff's past relevant work but could perform the exertionally medium, unskilled work of a packager (100,000 jobs in the national economy) and cleaner (190,000) (Tr. 102).

The VE testified further that if the above described individual were restricted to exertionally light work, he could perform the jobs of a light packager (75,000); sorter (40,000); and office worker (26,000) (Tr. 102). The VE testified that the additional restrictions of "no fine hearing ability," and "no telephone communication," would not change the job findings (Tr. 103). He stated further that the need to be off task for no more than 10 percent of the workday and/or the need to miss one day of work each month would not affect the job findings (Tr. 103). The VE testified that if the original hypothetical were modified to restrict the individual to sedentary work, he could perform the jobs of inspector

---

tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

(15,000); sorter (40,000); and information clerk (60,000) (Tr. 106). He added that the additional restriction of occasional contact with coworkers and supervisors with "no more than brief, superficial contact with the public" would eliminate the job of information clerk (Tr. 106). The VE stated that his testimony regarding absences, being off task, and the sit/stand option was based on his own professional experience (Tr. 104).

### D. The ALJ's Decision

Citing the medical records, the ALJ determined that Plaintiff experienced the severe impairments of "ischemic heart disease in combination with essential hypertension; degenerative disc disease; affective disorder; [and]substance abuse disorder," but found that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 45-46). She found that the conditions of early diverticulosis and tinnitus were non-severe (Tr. 46). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional restrictions:

> Sit, stand, and walk up to the exertional limits, with the opportunity to shift between positions every hour, for at least [five] minutes;
>
> No more than frequently reach, push/pull and engage in fine manipulation;
>
> Never climb ropes, ladders, or scaffolding, and never be exposed to unprotected heights;
>
> Only rarely, defined as less than on-third of the time, be exposed to extreme cold or extreme humidity; engage in work consisting of simple, routine tasks, defined as those generally mastered within 30 days; engage in goal-oriented rather than production-paced work, and in routine and predictable work, defined as that with no changes in the general nature of the tasks to be performed or to the work setting; engage in occasional interaction, defined as up to one-third of the day, with the co-workers and supervisors, but no more than brief, superficial contact with the public;
>
> Engage in work requiring no fine hearing ability and no telephone communication as an essential part of the job; be off task 10 percent of the work day, in addition to breaks and meals; and,
>
> Be absent once per month (Tr. 48-49).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the exertionally light jobs of packager, sorter, and office worker (Tr. 54, 102).

The ALJ discounted Plaintiff's allegations of disability. She cited November, 2015 records showing normal laboratory studies and a full range of motion in all extremities (Tr. 26-27). She cited February and October, 2015 examination records showing a normal gait and full range of motion (Tr. 28).

The ALJ discounted the allegations of cognitive limitation, noting that Plaintiff was able to drive, shop, and do errands by himself (Tr. 47). She discounted Dr. Goswami's January and August, 2014 assessments, noting that "there is no indication that Dr. Goswami [or] any other treating physician[] conducted a comprehensive evaluation" of Plaintiff's "joints and extremities" (Tr. 51). She noted that Dr. Goswami's assessment of Plaintiff's mental limitations was outside his area of expertise (Tr. 51). The ALJ accorded "significant weight" to Dr. Boneff's July, 2014 finding of a normal memory and affect (Tr. 52). The ALJ accorded "weight" to Dr. Tripi's "objective findings" but rejected her conclusions that Plaintiff was psychologically incapable of gainful employment, finding that the conclusions were based mostly on "subjective reports" (Tr. 52).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### **The Failure to Acknowledge Dr. Smith's January, 2014 Treating Opinion Warrants a Remand For Further Proceedings**

In his sole argument for remand, Plaintiff contends that the ALJ's failure to acknowledge Dr. Smith's January, 2014 assessment requires a remand to the administrative level for consideration of the treating opinion. *Plaintiff's Brief,* 16-23, *Docket #14,* Pg ID 822. On a related note, Plaintiff argues that the failure to address Dr. Smith's assessment undermines the ALJ's rejection of the substantially similar assessment by Dr. Goswami and Dr. Tripi's consultative psychological assessment. *Id.* at 19-22. In response, Defendant admits that the ALJ did not discuss Dr. Smith's assessment, but argues that the oversight does not amount to more than harmless error given that the medical transcript as a whole supports the rejection of Dr. Smith's findings. *Defendant's Brief,* 4-12, *Docket #16,* Pg ID 838.

Case law in effect at the time of Plaintiff's application requires that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). In the presence of contradicting substantial evidence however, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, *5 (1996). In explaining the reasons for giving less than controlling weight to the treating physician's opinion, the ALJ must consider (1) "the length

of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544; § 404.1527(c)(2)(i-ii).

The Court should decline to accept Defendant's argument that the failure to address Dr. Smith's assessment was harmless error. *Wilson* offers three instances in which the failure to explain the reasons for rejecting a treating source's opinion could be considered harmless: "(1) where the 'treating source's opinion is so patently deficient that the Commissioner could not possibly credit it,' (2) where the ALJ adopted the opinion or made findings consistent with it, or, (3) where the ALJ 'met the goal of § [1527(c)(2)].'" *Trischler v. Commissioner of Social Security*, 2015 WL 5016600, at *18 (E.D.Mich. August 24, 2015)(Morris, M.J.)(*citing Wilson*, 378 F.3d at 547).

None of the *Wilson* exceptions applies here. First, Dr. Smith's findings cannot be read as "patently deficient." Dr. Smith's January, 2014 findings are substantially similar to those made by Dr. Goswami in January and August, 2014 and include an evaluation of Plaintiff's exertional, postural, and manipulative limitations (Tr. 649, 659. While the ALJ provided a fairly thorough discussion of her reasons for rejecting Dr. Goswami's similar findings (Tr. 51), her discussion cannot be read to state that Dr. Goswami's findings (and by extension, Dr. Smith's) were wholly lacking in credibility.

However, the contention that the ALJ in effect "killed two birds with one stone" by rejecting Dr. Goswami's similar findings does not cure the failure to consider Dr. Smith's findings. A number of the ALJ's "good reasons" for rejecting Dr. Goswami's assessment are inapplicable to Dr. Smith's. While the ALJ found that Dr. Goswami's assessment was outside of his "area of expertise" as a cardiologist, the same reasoning does not apply to Dr.

Smith, who treating Plaintiff in the capacity of a family practitioner on a regular basis beginning at least as early as 2005 (Tr. 663-726). While the ALJ faulted Dr. Goswami's assessment because he did not conduct "a comprehensive evaluation . . . of the joints and extremities," records by Dr. Smith and/or his colleague during the relevant period show that Plaintiff received some review of his physical condition at each examination (Tr. 643, 662, 665, 667-668, 731). With nothing more, the August, 2014 MRI of the lumbar spine showing multiple disc herniations supports the finding that Plaintiff experienced some degree of exertional and postural limitation (Tr. 660-661). Moreover, records by both Dr. Goswami and Dr. Smith show that following the November, 2013 bypass procedure Plaintiff experienced shortness of breath upon mild and moderate exertion. Even assuming that neither treating source conducted a "comprehensive" joint and extremity evaluation, the exertional limitations set forth in Dr. Smith's assessment can be reasonably be interpreted to address shortness of breath as well as a "joint" problem.

As to the second *Wilson* exception, it cannot be concluded that the failure to address Dr. Smith's opinion is harmless because the ALJ adopted his assessment. To the contrary, the RFC for exertionally light work (standing or walking for up to six hours a day and lifting up to 20 pounds) stands grossly at odds with Dr. Smith's finding that Plaintiff was unable lift even 10 pounds or stand/walk for two hours as required for sedentary work (Tr. 48, 659); 20 C.F.R. § 404.1567. As to the third exception, the administrative determination as a whole cannot be interpreted to satisfy the requirements of § 1527(c)(2), which require evaluation of the length, nature, and frequency of the treating relationship. The determination contains no mention of Dr. Smith, much less the factors to be evaluated in assessing the weight accorded to a treating physician. *See Byland v. Commissioner of Social Sec.*, 2012 WL 2559239, at *2 (N.D.Ohio June 29, 2012) (remanding where "[t]here is no acknowledgment

by the ALJ that [the overlooked treating source] is the treating physician. There is also no discussion of what weight, if any, assigned to [his] opinion and no discussion of why his limitations were not incorporated into the ALJ's RFC finding").

Standing alone, the failure to acknowledge Dr. Smith's January, 2014 assessment warrants a remand for consideration of the treating findings. In addition, I recommend that other portions of the ALJ's factual findings be revisited upon remand. The ALJ found that Plaintiff's allegations of physical limitation were undermined by an August, 2014 MRI of the lumbar spine showing only "mild degenerative disease" (Tr. 50). However, the second page of August, 2014 MRI result shows "mild to *moderate*" nerve root impingement at L5-S1 with a possible annular tear (Tr. 661)(emphasis added). The study showing moderate abnormalities of the lumbar spine is consistent Plaintiff's claim of physical limitation. Further, while the ALJ found that Plaintiff "stopped all of his own pain medication" in support of her finding that he exaggerated his physical problems (Tr. 50), the record shows that as of June, 2014, he was "worried about taking anything for pain" given his history of narcotics abuse (Tr. 667). Similarly, the January, 2015 record cited by the ALJ actually states that while Plaintiff continued to experience low back pain, "he does not want to be on any narcotics[;] he is a recovering narcotic addict and wants to avoid those" (Tr. 731).

Finally, I agree with Plaintiff's contention that Dr. Smith's "less than sedentary" assessment undermines the ALJ's rejection of Dr. Goswami's similar findings. While it is less certain that Dr. Smith's assessment (pertaining mostly to the physical limitations) would be likely affect that ALJ's rejection of Dr. Tripi's conclusion of disability due to cognitive and psychological problems, it should be noted upon remand that Dr. Smith's finding of limitations in memory and sustained concentration (Tr. 659) support rather detract from Dr. Tripi's consultative conclusions.

While a remand to the administrative level is warranted for the above-discussed reasons, an award of benefits would be premature. A remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.,* 17 F.3d 171, 176 (6th Cir.1994). As Plaintiff acknowledges, consideration of Dr. Smith's assessment by the administrative fact-finder is required before deciding the ultimate question of whether Plaintiff is entitled to benefits. Accordingly, I recommend a remand for further administrative proceedings consistent with this Report.

## CONCLUSION

For the reasons set forth above, I recommend that Plaintiff's Motion for Summary Judgment [Docket #14] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings, and that Defendant's Motion for Summary Judgment [Docket #16] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which

it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 5, 2018

s/R. Steven Whalen
R. STEVEN WHALEN
U.S. MAGISTRATE JUDGE

---

**CERTIFICATE OF SERVICE**

I hereby certify on January 5, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on January 5, 2018.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen